## Browning Estate

*Edward Karet,* for accountant.
*G. Hayward Reid,* for widow.
*David H. Kubert,* for Charles W. Browning, Jr.

SHOYER, *J.,* November 2, 1977—Charles Wilson Browning died on January 27, 1974, intestate,

survived by his wife, Helen Browning, and seven first cousins. Letters of administration were granted to decedent's wife, Helen Browning, and her first and final account was confirmed nisi by this court on June 18, 1975.

Testimony was offered at the hearings held before this court on behalf of Charles Browning, Jr., an alleged illegitimate son of decedent born on May 7, 1963, who claimed an intestate share of decedent's estate. A certified copy, dated February 22, 1974, of an order dated January 23, 1964, by Honorable Juanita Kidd Stout of the common pleas court, in the matter of Com. ex rel. Angela O'Neill v. Charles W. Browning, was placed in evidence. This proceeding was in connection with a fornication and bastardy proceeding against defendant in favor of claimant born out of wedlock on May 7, 1963, to Angela O'Neill.

In an adjudication under date of June 18, 1975, we tested the Pennsylvania intestacy laws against the Pennsylvania Equal Rights Amendment, and applied the standards utilized in Labine v. Vincent, 401 U.S. 532 (1971), which held that a Louisiana descent statute distinguishing between legitimate and illegitimate children did not violate the Equal Protection Clause of the Fourteenth Amendment, and we ruled that the Pennsylvania statute of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, 20 Pa.C.S.A. §2107, is clearly "rational" and not "invidious." We stated that: "It is a biological truth that *maternity* is a matter of fact. It is an empirical truth that *paternity* is a matter of *opinion*. Never shall the twain merge so long as the moment of conception remains speculative and the term of pregnancy extends over a period of months. An Act of Assembly which acknowledges these

truths, respects their difference and, as a matter of public policy, chooses to protect the family and to encourage marriage vows, cannot be held unconstitutional."

Exceptions to the said adjudication were filed on behalf of the illegitimate son. Argument was continued from time to time to await the outcome of certain litigation in the Federal courts on the issue of an illegitimate child inheriting from the estate of his father.

For the twelfth time since 1968, the United States Supreme Court has considered the constitutionality of alleged discrimination on the basis of illegitimacy. In a five to four decision, the court concluded that "the statutory discrimination against illegitimate children in Illinois is unconstitutional" in that it violates the Equal Protection Clause of the Fourteenth Amendment: Trimble v. Gordon, U.S. Supreme Ct., April 26, 1977, 45 L.W. 4395.

Thereafter, by decree dated June 16, 1977, in view of the decision in Trimble, Administrative Judge Pawelec dismissed the exceptions filed on behalf of the illegitimate son pro forma without prejudice, and referred this matter back to the auditing judge, at his request, for further consideration.

In Trimble, Deta Mona Trimble, the illegitimate daughter of Jessie Trimble and Sherman Gordon, lived in Chicago with her parents from 1970 until her father, Sherman Gordon, died in 1974, the victim of a homicide. On January 2, 1973, the Circuit Court of Cook County, Illinois, entered a paternity order finding Gordon to be the father of Deta Mona and ordered him to pay $15 per week for her support. Gordon thereafter supported Deta Mona in accordance with the paternity order and openly ac-

knowledged her as his child. He died intestate, leaving an estate valued at approximately $2,500.

Shortly after Gordon's death, Jessie Trimble, as the mother and next friend of Deta Mona, filed a petition for letters of administration, determination of heirship and declaratory relief in the Probate Division of the Circuit Court of Cook County, Illinois. That court entered an order determining heirship, identifying as the only heirs of Gordon his father, mother, brother, two sisters and a half-brother. The court excluded Deta Mona on the authority of section 12 of the Illinois Probate Act which provides that an illegitimate child is the heir of its mother and of any maternal ancestor, and of any person from whom its mother might have inherited, if living. Additionally, it states that if the parents should intermarry, and if the father should then acknowledge the child, the illegitimate child should then be considered legitimate.

The Illinois statutory provision involved in the Trimble case made the child an heir of the mother without expressly stating, as in §2107 of the Probate, Estates and Fiduciaries Code, that "he shall be considered the child of his mother but not of his father." Counsel for Charles W. Browning, Jr., contends the reasoning of the majority is clearly applicable in Pennsylvania.

According to the majority, the Supreme Court must exercise a stricter scrutiny of state statutory classifications when they approach "sensitive and fundamental personal rights," as distinguished from "economic and social regulation," which is necessarily broad.

It was admitted that the promotion of a legitimate family relationship was a valid state purpose, but in a case like this, the Equal Protection Clause re-

quires more than the mere statement of a proper state purpose.

It was noted that in cases subsequent to Labine, supra, which we relied on in our original holding, the court expressly considered and rejected the argument that a state may attempt to influence the actions of men and women by imposing sanctions on the children born of their illegitimate relationship. The court noted that this argument was also rejected in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164 (1972).

"The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent." 406 U.S. at 175, 92 S.Ct. 1400, 31 L.Ed. 2d 768 (footnote omitted).

Also in Trimble, the court rejected arguments that decedent could have provided for his illegitimate daughter by will or by marrying her mother. Finally, the court rejected the argument that decedent knew the Illinois intestate laws, and that his failure to make a will shows his approval of that disposition.

It was noted in the majority opinion, and also argued in the instant case, that there is a serious problem of proving paternity which might justify a

more demanding standard for illegitimate children claiming under their fathers' estates than that required either for illegitimate children claiming under their mothers' estate or for legitimate children generally. In rejecting this argument, the majority held that the lower court failed to consider the possibility of a middle ground between the extremes of complete exclusion and case-by-case determination of paternity. Recognizing the state's proper interest in "establishing a method of property disposition," Justice Powell felt that inheritance rights of illegitimate children could be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under the intestate laws.

The Supreme Court undertook the difficult task of vindicating constitutional rights without interfering unduly with the state's primary responsibility in this area. Although previous decisions showed a need to facilitate potentially difficult problems of proof, the court asserted that: "Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination." Gomez v. Perez, 409 U.S. 535, at 538 (1973).

It was noted that in Mathews v. Lucas, 427 U.S. 495 (1976), one of the conditions of eligibility of an illegitimate child was actual dependency on the deceased wage earner. In Trimble, as well as in the instant case, decedent was found to be the father in a state court paternity action prior to his death, and on the strength of this finding, he was ordered to contribute to the support of his child.

The notes of testimony taken at the hearing before me show that the boy's mother registered in the

hospital as *Mrs. Browning*, but this is no proof that decedent acquiesced in the placing of *his* name on the birth certificate as father of the infant boy. The mother also testified that she had refused decedent's request that she submit to an abortion by instrument. The original birth certificate, entered into evidence, lists decedent as the father and Angela Maria Cerino as mother.

In contrast to Trimble, decedent never lived with the boy and his mother, but subsequent to the birth, married the present Helen Browning.

In view of the prior finding by the Common Pleas Court that Charles W. Browning is the father of claimant, Charles Wilson Browning, Jr., and on the basis of Trimble v. Gordon, supra, we now hold that that finding is sufficient to establish the illegitimate's right to claim a share of decedent's estate. In so doing, we also hold that section 2107 of the Probate, Estates and Fiduciaries Code is unconstitutional in that it violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by invidiously discriminating on the basis of illegitimacy.

Mr. Reid, counsel for Helen Browning, the widow, argues that legislation is pending in the State Assembly which would regulate the procedure for proving claims by illegitimates against the intestate estates of their alleged fathers. These regulations would hopefully set up safeguards which would limit the time for presenting claims to the lifetime of the father, and invalidate late claims which might not be presented until the father's decease some 50 years or more after the birth of the illegitimate claimant. We have no authority to await the passage of said remedial legislation but must now adjudicate the rights of Charles W.

Browning, Jr., in accordance with the statute in effect at his birth even though the same had not then been ruled unconstitutional. . . .

And now, November 2, 1977, the account is confirmed nisi.